# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22745-CIV-LENARD/GARBER

**WELLINGTON SPECIALTY
INSURANCE COMPANY**,

    Plaintiff,

vs.

**KENDALL CRANE SERVICE and
JUAN FRANCISCO GARCIA,**

    Defendants.
_____/

## AMENDED ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (D.E. 48) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (D.E. 10)

**THIS CAUSE** is before the Court on the Parties' cross-motions for summary judgment. On November 13, 2008, Plaintiff Wellington Specialty Insurance Company ("Wellington") filed its Motion for Summary Judgment ("Wellington's Motion," D.E. 10). Defendants Juan Francisco Garcia ("Garcia") and Kendall Crane Service ("Kendall") each filed separate responses to Wellington's Motion on January 14, 2009 (D.E. 33, 35), to which Wellington filed a consolidated reply on January 20, 2009 (D.E. 36). On February 27, 2009, Garcia filed his Motion for Summary Judgment, later joined by Kendall,[1] ("Defendants' Motion," D.E. 48). Wellington filed its response to Defendants' Motion on March 16, 2009

---

[1] On March 30, 2009, Kendall filed a Notice (D.E. 59), indicating that it joined Garcia's Motion for Summary Judgment.

(D.E. 54), to which Defendants filed a joint reply on March 31, 2009 (D.E. 60). Finally, on June 4, 2009, Kendall filed a motion seeking leave to amend its answer to assert counterclaims against Wellington for (1) breach of contract and (2) coverage by estoppel. (See "Motion to Amend," D.E. 72.)[2] Having reviewed the cross-motions for summary judgment, the Motion to Amend, the related pleadings, and the record, the Court finds as follows.

I.  **Background**

This case involves a declaratory action seeking judgment as to whether a commercial general liability ("CGL") insurance policy issued by Wellington covers a construction accident caused by the alleged negligence of Kendall's employee.[3] On September 12, 2007, Garcia, as an employee of Alameda Construction, Inc. ("Alameda"), was injured when a crane carrying trusses to the second story of a residential construction project struck him from behind and caused him to fall to the cement floor below. Garcia was employed by Alameda to secure the trusses to the tops of the two-story homes being built at the construction site. Alameda was hired as a subcontractor to perform rough carpentry and rebar replacement work by the general contractor Thales Building Corp. ("Thales"). The crane that struck Garcia was being operated by Kendall, another subcontractor of Thales,

---

[2] Wellington's response was filed on June 17, 2009 (D.E. 77), to which Kendall filed a reply on June 29, 2009 (D.E. 80). Wellington also filed a surreply on July 10, 2009 (D.E. 85).

[3] Except where otherwise noted, the following facts are undisputed.

hired to provide a crane and operator at the construction site. Garcia filed suit in state court against Kendall, Alameda, and Thales, alleging, inter alia, that Kendall was grossly negligent in operating its crane without the use of a "flagman" or other assistant and failing to move the trusses at a safe height.

Kendall subsequently filed a claim with Wellington under its CGL policy ("Policy"). (See Policy No. 0900100395, D.E. 37-2.) That policy defined Wellington's obligations as:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Id. at 24.) The Policy further requires that "[t]his insurance applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" (Id.) There is no dispute that the injury to Garcia meets these conditions and took place during the coverage period. As a result, Wellington undertook Kendall's defense in the underlying lawsuit. In July 2008, Wellington made a settlement offer of the policy limits which Garcia rejected. In August 2008, Wellington also requested and accepted a $1,000 deductible payment from Kendall.

Nevertheless, on September 30, 2008, Wellington filed the Complaint in this action against Kendall and Garcia seeking (1) a declaratory judgment that Wellington had no duty to indemnify Kendall in the underlying lawsuit and (2) reimbursement for the cost of

3

defending Kendall. (See "Complaint," D.E. 1 at 7-9.) Wellington continued to provide Kendall with a qualified defense in the underlying lawsuit despite its belief that coverage for the accident did not exist. Several months later, Kendall rejected Wellington's qualified defense and entered into a confidential settlement agreement with Garcia. As part of the settlement agreement, Garcia agreed to resolve its claims against Kendall in the amount of $4,400,000, but forego execution in exchange for Kendall's cooperation in pursuing its claims against Wellington. (See D.E. 84.)

The dispute over coverage stems from an exclusion in the CGL policy that precludes coverage for bodily injury to employees. The Policy contains a "Contractors Coverage Limitations" endorsement which, in part, states:

This insurance does not apply to:

**e.  Employer's Liability**

"Bodily injury" to:
(1) An "employee", "temporary worker", independent contractor of any insured or employee of any independent contractor arising out of and in the course of:
    (a) Employment by any insured; or
    (b) Performing duties related to the conduct of any insured's business; or
    (c) Arising out of the injured party's employment; or
(2) A fellow "employee", "temporary worker" or independent contractor of any insured arising out of and in the course of such employment when the insured is an "executive officer" of such employer;

(D.E. 37-2 at 23.) The Policy defines "employee" as follows, "'Employee' includes a 'leased worker'. 'Employee' does not include a 'temporary worker'." (Id. at 36.) It is undisputed

4

that Garcia is neither a "leased employee" nor a "temporary worker."

Wellington claims the exclusion of coverage for bodily injury to employees is applicable to Garcia as he was an employee or co-employee of Kendall at the time of the accident. (Wellington's Motion at 1.) Relying upon <u>Florida Insurance Guaranty Association, Inc. v. Revoredo</u>, 698 So.2d 890 (Fla. 3d DCA 1997), Wellington argues (1) the term "employee" in the Policy refers to both Kendall's actual employees and "statutory employees" and (2) Garcia was Kendall's "statutory employee" under Florida's workers' compensation statutes. The terms "statutory employer" or "statutory employee" refer to the concept established in Florida Statutes § 440.10 that a general contractor who sublets work to others is liable for securing injury compensation for the employees of its subcontractors, if the subcontractors fails to do so. See <u>Motchkavitz v. L.C. Boggs Indus., Inc.</u>, 407 So.2d 910, 912 (Fla. 1981). Section 440.10, in relevant part, states:

> In case a contractor sublets any part or parts of his or her contract work to a subcontractor or subcontractors, all of the employees of such contractor and subcontractor or subcontractors engaged on such contract work shall be deemed to be employed in one and the same business or establishment, and the contractor shall be liable for, and shall secure, the payment of compensation to all such employees, except to employees of a subcontractor who has secured such payment.

FLA. STAT. ANN. § 440.10(b) (West 2004).

In <u>Revoredo</u>, the employee of a subcontractor was fatally injured during the pouring of a concrete tie beam. 698 So.2d at 890. The employee's estate sought to collect from the general contractor's CGL insurance policy. <u>Id.</u> at 891. The insurer denied coverage based

5

on a standard employee exclusion which precluded claims by any employee of the insured arising out of or in the course of employment. Id. Thus, the court was presented with the question of whether the subcontractor's employee was excluded from coverage under the general contractor's insurance policy. In determining that the exclusion did apply, the court in Revoredo stated, "[s]tatutory employees have been treated identically to actual employees in relation to standard employee exclusion clauses." Id. at 892 (citing Dodge v. Fid. & Cas. Co. of N.Y., 424 So.2d 39 (Fla. 5th DCA 1982)). The court further stated, "[t]he logic in the exclusion from coverage of both types of employees is simple and compelling: the only coverage intended, and for which the premium has been paid, is the liability of the insured to the public, as distinguished from liability to the insured's employees whether or not they are protected by the workers' compensation law." Id. Because both Alameda and Kendall were subcontractors of Thales, Wellington argues their employees were statutory employees or co-employees and thus excluded from the Policy.

In response, Kendall and Garcia argue the language of the Policy is clear and unambiguous. Defendants assert they have proven coverage exists as it is undisputed that a "bodily injury" caused by an "occurrence" took place in the "coverage territory," as those terms are defined in the Policy, and Wellington has not demonstrated the employee exclusion applies. Defendants argue that the term "employee" is limited in scope and if any ambiguity exists, it should be construed against Wellington. Defendants also argue that Garcia and Kendall's employees were not "statutory employees" under Section 440.10 as both Alameda

6

and Kendall were independent co-subcontractors. Finally, Defendants argue that the statutory employer relationship is limited to situations where work is subletted. Kendall now seeks to amend its answer to assert counterclaims against Wellington for (1) breach of contract and (2) coverage by estoppel.

II. **Discussion**

A. **Motions for Summary Judgment**

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal citation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; see also Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989). All parties agree that the relevant facts are undisputed in this case. Rather, the only issues presented are: (1) whether the Policy is ambiguous as to who is excluded as an "employee"; and if so, (2) whether Garcia is excluded as a "statutory employee" as that concept exists under Florida's workers' compensation statutes.

The construction of an insurance policy "is a question of law for the court and may be appropriately decided on motions for summary judgment." Nat'l Union Fire Ins. Co. v. Underwriters at Lloyd's, 971 So. 2d 885, 888 (Fla. 3d DCA 2007). Under well-established principles of insurance law in Florida, "insurance contracts are construed in accordance with 'the plain language of the polic[y] as bargained for by the parties.'" Fayad v. Clarendon Nat'l. Ins. Co., 899 So.2d 1082, 1086 (Fla. 2005) (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 33 (Fla. 2000). However, where the language in the insurance policy is susceptible to more than one reasonable interpretation as to whether coverage exists, the insurance policy is considered ambiguous. See Fayad, 899 So.2d at 1086; Anderson, 756 So.2d at 34. Where an insurance policy is ambiguous, it is to be construed liberally in favor of the insured and strictly against the insurer. See IDC Constr., LLC v. Admiral Ins. Co., 339 F. Supp. 2d 1342, 1348 (S.D. Fla. 2004); Berkshire Life Ins. Co. v. Adelberg, 698 So.2d 828, 830 (Fla. 1997). This is especially the case where the ambiguous language excludes coverage, as such clauses are construed even more strictly against the insurer. See Fayad,

899 So.2d at 1086; Anderson, 756 So.2d at 34. Finally, the insurer has the burden of establishing that an exclusion to coverage applies. See IDC Constr., LLC, 339 F. Supp. 2d at 1348.

Under a plain reading of the Policy, the employee exclusion clause does not apply to Garcia and coverage exists. The Policy's introductory language states that "[o]ther words and phrases that appear in quotation marks have special meaning" and instructs the reader to refer to the definitions section of the Policy for the meaning of such words. (See D.E. 37-2 at 24.) The Policy's definition of "employee" states, "'[e]mployee' includes a 'leased worker'. 'Employee' does not include a 'temporary worker'." (Id. at 36.) Thus, the Policy's definition of "employee," does not specifically include the employees of other subcontractors and it is undisputed that Garcia was neither an actual employee nor a leased employee of Kendall. In addition, the plain meaning of the term "employee," is generally limited to those who are under the control of or performing a service for an employer. See Black's Law Dictionary (defining "employee" as "a person who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance."); MERRIAM-WEBSTER DICTIONARY 379 (10th ed. 1993) (defining "employee" as "one employed by another [usually] for wages or salary and in a position below the executive level"); AMERICAN HERITAGE DICTIONARY 451 (3d ed. 1993) (defining "employee" as "a person who works for another in return for compensation."). It is undisputed that Kendall did not control or supervise Garcia or any

9

other Alameda employee. (Def. Statement of Undisputed Material Facts, D.E. 48 at ¶ 6; Wellington's Response to Statement of Material Facts, D.E. 53 at ¶ 6.) Nor did Garcia perform any work for or receive pay from Kendall. (Id.) Thus, a plain reading of the Policy does not support Wellington's interpretation. Additionally, even if the language of the Policy was considered ambiguous, the employee exclusion clause must be construed strictly against Wellington.

Furthermore, Wellington's argument that Garcia is Kendall's "statutory employee" fails to adequately rebut the presumption that a policy exclusion is construed even more strictly against the insurer where ambiguity exists.[4] Under Florida's workers' compensation statutes, the concept of a "statutory employer" is intertwined with the relationship between a general contractor and its subcontractors, or a subcontractor and its own subcontractors. See Motchkavitz, 407 So.2d at 912 ("Section 440.10 establishes the concept of 'statutory employer' for contractors who sublet part of their work to others."). As several Florida appellate courts have explained, "[t]he obvious legislative intent [behind section 440.10 is] to insure that a person performing a contractor's work, even as an employee of a subcontractor, shall be entitled to workers' compensation protection with the primary employer if the subcontractor fails to provide such coverage." Amorin v. Gordon, 996 So.2d 913, 916 (Fla. 4th DCA 2008) (quoting Roberts v. Gator Freightways, Inc., 538 So.2d 55, 60

---

[4] The Court also notes that there is no language in the Policy that requires or even suggests that ambiguity should be resolved by reference to Florida's workers' compensation statutes.

10

(Fla. 1st DCA 1989). Thus, it is the act of subletting work that creates the statutory relationship, not the mere happenstance of working on the same construction site. See Lingold v. Transamerica Ins. Co., 416 So.2d 1271, 1272-73 (Fla. 5th DCA 1982) ("Under Florida law applicable in this case, an entity is required to provide workers' compensation when it is an 'actual' employer because it employs laborers under direct supervision and control or when it, as a contractor, sublets part of a contract obligation to others and thereby becomes a 'statutory employer' of the subcontractor's employees"); Green v. APAC-Florida, Inc., 935 So.2d 1231, 1233 (Fla. 2d DCA 2006). Reveredo, the case relied upon by Wellington, merely holds that an insurance policy exclusion of an insured's employees may apply to both actual and statutory employees, where such a relationship exists. Id. at 892. Accordingly, the Court finds there are no genuine issues of material fact for trial and the Policy's standard employee exclusion does not apply to Garcia.

### B. Motion to Amend Answer to Assert Counterclaim

Kendall's motion to amend its answer to add a counterclaim was filed approximately eleven weeks after the scheduling order's deadline for amending pleadings. As such, Kendall must show "good cause" why leave to amend should be granted pursuant to Rule 16 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 16(B); Cold Stone Creamery, Inc. v. Lenora Foods I, LLC, 2009 WL 1532736 at *2 (11th Cir. June 3, 2009); Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1231-32 (11th Cir. 2008). Kendall seeks to amend its answer to assert two claims: (1) breach of contract against Wellington for failure

to defend the underlying lawsuit and negotiate and fund a reasonable settlement agreement and (2) coverage by estoppel against Wellington as a result of Wellington's initial investigation and defense on behalf of Kendall.[5] Kendall explains that any delay in amendment was because its claims only "ripened when Kendall Crane rejected Wellington's qualified defense, executed the Settlement Agreement and quantified its damages as a result of the Settlement Agreement." ("Kendall's Reply to Motion to Amend," D.E. 80 at 2.) The Court finds that good cause has not been shown for why Kendall's breach of contract counterclaim should be addressed at this late stage of the litigation as damages need not be quantified in order to bring a breach of contract claim.[6] See Technical Packaging, Inc. v. Hanchett, 992 So.2d 309, 313 (Fla. 2d DCA 2008). Therefore, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff Wellington Specialty Insurance Company's Motion for Summary Judgment (D.E. 10) is **DENIED**;

2. Defendants Kendall Crane Service and Juan Francisco Garcia's Motion for Summary Judgment (D.E. 48) is **GRANTED**;

3. As the issue of coverage under the Policy has now been determined, to the

---

[5] Because in addressing the cross-motions for summary judgment the Court has already reached the issue of whether coverage applies, the Court only addresses Kendall's motion to amend with regard to the breach of contract claim.

[6] Kendall failed to file its Motion to Amend until nearly three months after the deadline for amending pleadings, after motions for summary judgment were filed and became ripe, and approximately four months before the scheduled date for trial.

extent that Defendant Kendall Crane Service wishes to assert a claim against Wellington for breach of contract or bad faith failure to settle, it should file a separate complaint. Accordingly, Defendant Kendall Crane Service's Motion for Leave to Amend Answer to Assert Counterclaim (D.E. 72) is **DENIED**;

4. All other pending motions, including Plaintiff's Motion to Strike Notice of Supplemental Authority (D.E. 86), are **DENIED AS MOOT**;

5. This case is now **CLOSED**;

**DONE AND ORDERED** in Chambers at Miami, Florida, this 7th day of June, 2010.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**